IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHRISTY FRALEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-19-459-STE |
| ) | |
| ANDREW M. SAUL, ) | |
| **Commissioner of the Social Security** ) | |
| **Administration,** ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

### **I.    PROCEDURAL BACKGROUND**

Initially and on reconsideration, the Social Security Administration denied Plaintiff's applications for benefits. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 17-32). The Appeals Council (AC) granted Plaintiff's request for review, but ultimately affirmed the ALJ's decision. (TR. 4-8). Thus, the decision of the

AC became the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 106–107 (2000) ("[I]f the Appeals Council grants review of a claim, then the decision that the Council issues is the Commissioner's final decision.").

## II. THE APPEALS COUNCIL'S DECISION

The AC followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520 416.920. At step one, the AC determined that Plaintiff had not engaged in substantial gainful activity since June 19, 2015. (TR. 6). At step two, the AC determined that Ms. Fraley had the following severe impairments: degenerative disc disease of the thoracic spine; osteoarthritis; fibromyalgia; lumbago chronic pain syndrome; anxiety with panic disorder; depression; history of carpal tunnel syndrome; hypertension; diabetes mellitus; inflammatory arthritis with positive ANA; colitis diverticulitis; lupus; and obesity. (TR. 6-7). At step three, the AC found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 7).

At step four, the AC concluded that Ms. Fraley could not perform her past relevant work, but retained the residual functional capacity (RFC) to perform:

> a reduced range of light work with the following limitations: the claimant is able to understand, remember, and apply simple and detailed instructions; is able [to] concentrate and persist for extended periods in order to complete simple and detailed work tasks with routine supervision and adapt appropriately to a routine work environment; is able to maintain appropriate work relationships with coworkers and supervisors, but should have infrequent work related contact with the general public; is limited to frequent, but not constant handling and fingering bilaterally; must avoid concentrated exposure to loud noises; and the claimant requires a sit/stand option, defined as a brief positional change from sitting to standing and vice

versa with no more than one change in position every 20 minutes and without leaving the work station so as not to diminish pace or production.

(TR. 7).

At the administrative hearing, the ALJ had presented these RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 69-70). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles (DOT). (TR. 70). The AC adopted the VE's testimony and concluded that Ms. Fraley was not disabled at step five based on her ability to perform the identified jobs. (TR. 7).[1]

## III. STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence … is more than a mere scintilla … and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

---

[1] The AC did not explicitly state that it was adopting the VE's testimony, but the AC did state that it adopted "the [ALJ's] statements regarding the pertinent provisions of the Social Security Act, Social Security Administration Regulations, Social Security Ruling and Acquiescence Rulings, the issues in the case, [ ] the evidentiary facts, as applicable, … [and] the [ALJ's] findings or conclusions regarding whether the claimant is disabled." (TR. 4-5). This language would encompass the ALJ's adoption of the VE's testimony concerning jobs that Ms. Fraley could perform based on the VE's testimony at the administrative hearing. *See* TR. 31.

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## IV.  ISSUES PRESENTED

On appeal, Ms. Fraley alleges the ALJ erred in evaluating: (1) a consultative examiner's opinion and (2) the opinions from two State Agency physicians. (ECF No. 14:3-15).

## V.  NO REVERSIBLE ERROR IN THE ALJ'S CONSIDERATION OF THE CONSULTATIVE EXAMINER'S OPINION

On November 14, 2016, Dr. Julie Wallace performed a mental status evaluation on Ms. Fraley. (TR. 927-930). Dr. Wallace diagnosed Plaintiff with Generalized Anxiety Disorder and Major Depressive Disorder and stated:

> It is recommended that Ms. Fraley continue her medication management for both the depression and anxiety. She may also benefit from ongoing therapy to learn coping skills. She is likely to have difficulty in any job setting due to motivation, anxiety, and panic attacks. She is additionally sensitive to sounds that may not seem loud to others but elicit panic attacks for her. She would work best in an environment where she could be off to herself in a quiet place.

(TR. 929-930).

The ALJ acknowledged Dr. Wallace's evaluation and stated:

> The claimant presented for a psychological examination with Julie Wallace, Ph.D., in November 2016, reporting that she felt anxious several times per day. She described being easily fatigued, which made her more irritable. The claimant also reported that she runs away and her heart starts beating rapidly when having a panic attack. She further indicated that she becomes sweaty and shaky, and she described herself as clammy. The claimant reported that she avoids places because of the panic attacks and did not go

4

anywhere with loud noises. In addition, she reported feeling depressed at least three days per week, and she described hypersomnia. She endorsed feelings of worthlessness, isolation, and withdrawal, but denied a diminished ability to concentrate and indecisiveness. On mental status exam, her speech was normal, and her thought processes appeared to be relevant, logical, well connected, and goal directed. Moreover, her thought content was all normal, and she denied suicidal ideation. The claimant's mood was good and she described herself as happy, and her affect was appropriate and content consistent. Dr. Wallace administered the Montreal Cognitive Assessment, in which she scored a 26, which was noted to be normal. Dr. Wallace noted that the claimant was alert and fully oriented. Further, she indicated that the claimant did not display difficulty with recall, memory, or concentration. Dr. Wallace noted that the claimant's fund of information was consistent with her educational background, and that the claimant was estimated to be functioning in the average range of intellectual capabilities. Finally, Dr. Wallace noted that the claimant is also capable of good judgment and insight.

(TR. 27-28).

With respect to the ALJ's evaluation of Dr. Wallace's opinion, Ms. Fraley alleges the ALJ failed to acknowledge or evaluate the psychologist's findings that Plaintiff:

- would likely have difficulty in any job setting due to motivation, anxiety, and panic attacks;

- is sensitive to sounds that may not seem loud to others but elicit panic attacks for her; and

- would work best in an environment where she could be off to herself in a quiet place.

(ECF No. 14:5). According to Plaintiff, these statements represent medical opinions which the ALJ ignored and work-related limitations which should have been included in the RFC. (ECF No. 14:7-12). Ms. Fraley acknowledges that the RFC required that Plaintiff "avoid concentrated exposure to loud noises," but argues that Dr. Wallace's opinion requires more restrictive accommodations, such as "an environment where she could be off to

herself in a quiet place." (ECF No. 14:7-10). The Court finds no reversible error in the consideration of Dr. Wallace's opinions.

The Court begins by noting the ALJ's duty to evaluate every medical opinion in the record, *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). A "medical opinion," in turn, is a regulatory term reserved for "judgments about the nature and severity of a claimant's impairment(s), including his symptoms, diagnosis and prognosis, what he can still do despite impairment(s), and his physical and mental restrictions." *Lackey v. Barnhart,* 127 F. App'x 455, 457 (10th Cir. 2005) (alterations and internal quotation marks omitted); *accord* 20 C.F.R. §§ 404.1527(a)(1); 416.927(a)(1). Here, Dr. Wallace's statement that Ms. Fraley would "likely … have difficulty in any job setting due to motivation, anxiety, and panic attacks" is not a "medical opinion" which the ALJ was required to evaluate. *See Sullivan v. Colvin*, 519 F. App'x 985, 988 (10th Cir. 2013) (noting that consultative neuropsychologist's statement that "[i]t is likely [the plaintiff] will experience difficulty working within the majority of competitive environments," was "not a true medical opinion[] about the nature and severity of her mental limitations.") (citation omitted).

What remains are Dr. Wallace's statements that Ms. Fraley "is additionally sensitive to sounds that may not seem loud to others but elicit panic attacks for her … [and] would work best in an environment where she could be off to herself in a quiet place." (TR. 930). Ms. Fraley argues that the RFC's accommodation for avoiding "concentrated exposure to loud noises" was not specific enough to accommodate Dr. Wallace's opinion which was particular to Plaintiff—i.e.—she needed to avoid sounds that "may not seem

6

loud to others." (ECF No. 14:8). However, the critical aspect of Dr. Wallace's opinion is the work-related limitation associated with the same—that Plaintiff's sensitivity to sounds would require her to work "in an environment where she could be off to herself in a quiet place." (TR. 930). The Court acknowledges that the ALJ erred in failing to acknowledge or discuss this portion of Dr. Wallace's opinion. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (noting that an ALJ must evaluate every medical opinion in the record). But any error is harmless based on the findings at step five.

At step five, the AC found that Plaintiff could perform the jobs of: (1) merchandise marker, DOT # 209.587-034; (2) routing clerk, DOT # 222.587-038; and (3) collator operator, DOT # 208.685-010. (TR. 7). For each job, the DOT assigns a "noise intensity level," which rates the noise intensity of a work environment on a scale of 1 to 5. *See Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles,* United States Department of Labor, 1993, Appendix D. (DOT, Appendix D). The jobs of merchandise marker and collator operator are each rated with a noise intensity level of 3, which is defined as "moderate." *See* DOT # 209.587-034 & DOT # 208.685-010. Neither of these jobs would be compatible with Dr. Wallace's opinion that Plaintiff would need to work in a "quiet place." But the job of routing clerk is assigned a noise intensity level 2, which is defined as "quiet." DOT # 222.587-038. The quiet environment of the routing clerk job is consistent with Dr. Wallace's opinion that Plaintiff work in a "quiet place."

In addition, to the extent that Dr. Wallace opined that Ms. Fraley work "in an environment where she could be off to herself," the job of routing clerk also meets this

7

limitation. For this job, the DOT lists a "People" category at "level 8." DOT # 222.587-038. But after noting "People: 8—Taking Instructions—Helping," the DOT states that such level of interaction with people is "N–Not significant" in the job of routing clerk. DOT # 222.587-038. But even if the DOT could be interpreted as assigning a "level 8 people category" to the routing clerk job, that category requires only the ability to "attend[ ] to the work assignment instructions or orders of supervisor," which is compatible with Ms. Fraley's RFC. *Compare Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles,* United States Department of Labor, 1993, Appendix B (defining a "level 8" "People" category) *with* TR. 24 (Plaintiff's RFC which allowed her to "concentrate and persist for extended periods in order to complete simple and detailed work tasks with routine supervision and adapt appropriately to a routine work environment;" and "maintain appropriate work relationships with coworkers and supervisors.)"

Because the job of routing clerk was available to Plaintiff and accommodated Dr. Wallace's opinions, the Court finds any error associated with the ALJ's failure to properly evaluate the opinion—to be harmless. *See, e.g., Barrett v. Astrue,* 340 F. App'x 481, 487–89 (10th Cir. 2009) (unpublished) (even if court accepted claimant's argument, there was still a remaining job identified by the VE, and therefore there was no basis for finding error).

**VI. NO ERROR IN THE CONSIDERATION OF OPINIONS FROM STATE AGENCY PHYSICIANS**

Finally, Ms. Fraley argues that the ALJ "erred in granting significant weight to State agency medical consultants Drs. Norcross and Boatman, who opined that Ms. Fraley can

8

perform light work." (ECF No. 14:13). Plaintiff's argument is grounded in the theory that Drs. Norcross and Boatman were "non-examining, non-treating sources who simply reviewed Ms. Fraley's medical evidence of record (MER) and opined as to Ms. Fraley's limitations." (ECF No. 14:13). But the Court rejects this allegation of error because the ALJ had a duty to evaluate the opinions from Drs. Norcross and Boatman,[2] and Plaintiff has failed to explain how the ALJ erred in doing so. *See Keyes–Zachary v. Astrue,* 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those contentions that have been adequately briefed for review."). Indeed, although the physicians opined that Plaintiff could perform "light" work,[3] the ALJ opined more restrictive limitations based on Ms. Fraley's testimony. *See* TR. 29. The Court rejects this allegation of error.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on January 10, 2020.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE

---

[2] *See supra*, *Hamlin*.

[3] *See* 135, 168-169; *see also* 404.1567(b) & 416.967(b).